**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Billy Joe Herman, | ) | **ORDER DENYING MOTION TO** |
| | ) | **VACATE, SET ASIDE, OR CORRECT** |
| Petitioner, | ) | **SENTENCE** |
| | ) | |
| vs. | ) | Case No. 3:22-cv-55 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Case No. 3:18-cr-103 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Billy Joe Herman, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Petitioner Billy Joe Herman's ("Herman") motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed on April 1, 2022. Doc. No. 103. The United States opposes the motion. Doc. No. 108.  After careful review of the entire record, the motion is denied.

## I.   BACKGROUND

The facts of this case, as summarized by the United States Court of Appeals for the Eighth Circuit, are as follows:

> The facts in this case are harrowing. Herman brutally beat Amanda Engst and choked her with an electrical cord. Then he wrapped her in a tarp, shoved her into the trunk of her own car, and drove to a remote bridge over a river. Once there, he pulled her out of the vehicle and struck her on the head multiple times with a shovel. Although there is a dispute about whether Engst was still alive at that point, no doubt remained after Herman tied her to two concrete blocks and tossed her into the river. Herman's then-wife [Crystal Herman], who was present throughout,

eventually notified law enforcement about what had happened. She ended up pleading guilty in state court for her role as an accomplice.

Doc. No. 95-1. With those facts in mind, the Court turns to the procedural background, focusing on the points in this case most pertinent to this § 2255 motion.

In 2018, Herman was federally indicted on three counts: (1) felony murder in violation of 18 U.S.C. §§ 1111, 1153, 1201(a), and 2; (2) kidnapping in violation of 18 U.S.C. §§ 1153, 1201(a), and 2; and (3) assault with intent to commit murder in violation of 18 U.S.C. §§ 113(a)(1), 1153, and 2. Doc. No. 1. Eventually, Herman and the United States entered into a plea agreement, where he agreed to plead guilty to an information charging him with second-degree murder within Indian Country in violation of 18 U.S.C. §§ 1111 and 1153.[1] Doc. Nos. 36, 39.

On April 30, 2019, Herman and his attorney appeared for a waiver of indictment and change of plea hearing (the "Change of Plea").[2] Doc. Nos. 42, 54. At the hearing, the Court placed Herman under oath, explaining its significance. Doc. No. 54, p. 3. The Court then engaged in a Rule 11 colloquy, and Herman confirmed that he wanted to proceed with the hearing, had enough time to discuss the matters with his attorney, and was satisfied with his attorney. Id. at 5. The Court reviewed the statutory maximum penalties for the charge of second-degree murder within Indian Country, which included a maximum sentence of life in prison. Id. at 6-7. Herman affirmed that he understood the charges against him and related penalties. Id. at 7. The Court also generally explained the impact of United States Sentencing Guidelines ("USSG") and, more specifically, reviewed the sentencing guideline calculation as set forth in the plea agreement. Id. at 10-11. The

---

[1] Notably, in the indictment, two counts carry a mandatory life imprisonment. See 18 U.S.C. § 1201(a). Conversely, the single-count information does not.

[2] The Honorable James Maxwell Moody, Jr., presided over the Change of Plea. Doc. No. 42. The case was later reassigned to the undersigned, who presided over the sentencing hearing and signed the judgment. Doc. No. 48.

Court emphasized that "if it turns out that your guideline range is higher than you expected that will not be a reason to withdraw your guilty plea," and Herman stated he understood. Id.

During the Change of Plea, the United States specifically highlighted the appeal waiver in paragraph 21 of the plea agreement, explaining that it is "asking for an upward departure under [USSG] 5K2.8 for extreme conduct in this case and defendant is going to oppose that" and also noted that Herman retained the right to appeal an upward departure under USSG § 5K2.8. Id. at 12. This understanding is reflected in paragraph 21 of the plea agreement, which provides, in pertinent part:

> Other than the right to appeal an upward departure at sentencing under USSG § 5K2.8 as stated in paragraph 14,[3] by signing the Plea Agreement, defendant voluntarily waives defendant's right to appeal the Court's Judgment against defendant; and, absent a claim of ineffective assistance of counsel, defendant waives all rights to contest the Judgment in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. Defendant reserves only the right to appeal from a sentence that is greater than the upper limit of the Court-determined Sentencing Guidelines range as defined in paragraph 14.

Doc. No. 36, ¶ 21. Herman confirmed that he reviewed paragraph 21 with his attorney, understood the waivers of appeal, and that he thought these waivers were in his best interest. Doc. No. 54, p. 13.

Having established the waivers of appeal, the Court next reviewed the factual basis that would support a plea of guilty. To that end, the United States proffered the following factual basis:

---

[3] Paragraph 14 provides:

> At sentencing, the United States will argue that because of the defendant's extreme conduct, the United States will seek an upward departure under USSG § 5K2.8 (Extreme Conduct). Defendant will oppose this argument. Notwithstanding the appeal waiver in paragraph 21, Defendant retains his right to appeal an upward departure under USSG § 5K2.8.

Doc. No. 36, ¶ 14.

> On or about October 12, 2015, in the District of North Dakota, in Indian Country, and within the exclusive jurisdiction of the United States, Billy Joe Herman, an Indian, did unlawfully kill a human being, namely, Amanda Engst, with malice aforethought. Specifically Billy Joe Herman and Crystal Herman were with Amanda Engst for several days leading up to October 12, 2015. On October 12, 2015, Billy Joe Herman took one or more violent actions, in concert with Crystal Herman, in Indian Country, on the Spirit Lake Indian Reservation, the actions of which caused the death of Amanda Engst. Following the death of Amanda Engst, BILLY JOE HERMAN and Crystal Herman submerged the body of Amanda Engst in the Sheyenne River to conceal it.

Id. at 14. The United States noted that these same facts were provided in paragraph 6 of the plea agreement.  Id. After the recitation of the factual basis, the Court asked whether Herman had any questions for his attorney before continuing with the hearing, to which he responded, "No." Id. This colloquy followed:

> The Court: If this case were to go to trial, do you believe the government would prove each and every fact that Mr. Chase just recited?
> The Defendant: Yes.
> The Court: Is that because they're true?
> The Defendant: Yes.
> The Court: Do you admit that you killed Miss Engst in Indian Country?
> The Defendant: Yes.
> The Court: Do you admit all of the other elements of the crime that are set out in your Plea Agreement?
> The Defendant: Yes.

Id. at 15. Herman then pleaded guilty to the information, and the Court accepted his guilty plea, finding Herman "is entering the plea voluntarily with full knowledge of the facts[.]"[4] Id. at 19.

Prior to sentencing, the United States filed a memorandum requesting the Court to sentence Herman to life in prison, arguing for an upward departure under USSG § 5K2.8, and, alternatively, for a variance to life in prison under 18 U.S.C. § 3553(a), among other things. Doc. No. 74. Herman's attorney responded, raising several arguments against life in prison. Doc. No. 75. As

---

[4] The Court accepted the factual basis "for the purposes of this plea only," noting it was not binding the sentencing judge to those facts at sentencing. Doc. No. 54, p. 17.

relevant to this motion, his attorney raised arguments concerning the purported discrepancies between Dr. Mark Koponen's autopsy report and Crystal Herman's testimony. Id. One such discrepancy was that, according to Crystal, Herman strangled Engst with an electrical cord and beat and "jumped up and down" on her prior to her death, but the autopsy report purportedly showed "an absence of evidence corroborating the strangulation of Ms. Engst by the use of an electric cord or any other devise" and "provide[d] no evidentiary support" for Crystal's claim that Herman beat and jumped up and down on Engst. Id. at 7. Herman's attorney also raised Herman's meth addiction and emphasized that Crystal acknowledged "they were all consuming considerable amounts of methamphetamine" prior to Engst's death. Id. at 10, 11.

With these arguments in mind, the case proceeded to sentencing on October 18, 2019. Doc. No. 89. At the beginning of the sentencing hearing, the Court placed Herman under oath, cautioning him that he could be subject to prosecution for any untrue statements. Id. at 6-7. After doing so, the Court spoke with Herman to address the plea agreement and related factual basis. Id. at 17-26. To that end, the Court quoted paragraph 6 of the plea agreement and the United States' proffered factual basis from the Change of Plea. Id. at 18-20. The Court asked a series of questions:

> The Court: . . . Now for the purposes of this hearing are you in a position where you are willing to reiterate that this crime did occur as you set forth at the change of plea hearing and that it did happen in Indian Country?
> The Defendant: Yes.
> The Court: Are you refuting any of the factual basis that was provided at the change of plea hearing under oath?
> The Defendant: No.
> The Court: Are you satisfied that you have had an opportunity to confer with counsel with regards to this particular fact that is of importance to this hearing?
> The Defendant: Yes.
> The Court: And you understand that you have then admitted to a factual basis where you killed Ms. Engst in Indian Country?
> The Defendant: Yes.

Id. at 21-22. After seeking comment from the United States, the Court asked Herman's attorney if Herman understood "what he is positing to the Court." Id. at 23. His attorney responded:

5

Yes, Your Honor. And what I would suggest is we've reviewed those issues and obviously went through those issues as counsel and I on many occasions talked about the fact that jurisdiction would be an issue with regard to the charge. And Mr. Herman and I had lengthy discussions about that in looking at the Plea Agreement. And I think if the Court asks Mr. Herman if we've reviewed those issues and whether he was satisfied with our discussion and in that light is admitting to that element of the offense as he's admitted to all the other elements of the offense, I think that would be sat - -- I believe the Court would find that to be satisfactory.

Id. at 23-24. The Court then turned back to Herman:

The Court: Do you have any objection to the factual basis in this matter? Do you have any objection – well, I'll let you answer that first. Do you have any objection to the factual basis in this matter?
The Defendant: No.
The Court: Do you have any objection that this crime occurred in Indian Country?
The Defendant: No.
The Court: Now as far as I'm concerned, with regards to the Plea Agreement there was a waiver of appeal that was signed per the Plea Agreement and you have been well advised of any possible jurisdictional issues here and you have waived that. In fact, I believe that the appeal that you retained in this matter was under 5K2.8 and I think that's what you retain. So this would not be something that you'd be able to appeal. Do you realize that you've waived the right to appeal jurisdiction?
The Defendant: Yes.
The Court: And you still wish to go forward?
The Defendant: Yes.
The Court: And you've consulted with your counsel on this?
The Defendant: Yes.
The Court: And you understand the ramifications of that?
The Defendant: Yes.
                                              ***
The Court: Sure. So other than ineffective assistance of counsel and the upward departure under 5K2.8, the defendant understands that he's waived his right to appeal?
The Defendant: Yes.
The Court: And the record will reflect that Mr. Herman nodded his head and answered yes and that Mr. Lancaster was also nodding his head.

Id. at 24-26.

With the factual basis for Herman's guilty plea sufficiently addressed, the Court adopted the undisputed portions of Presentence Investigation Report ("PSR") and reserved ruling on the objections and related facts that would support an upward departure pursuant to USSG § 5K2.8

and/or a variance under 18 U.S.C. § 3553(a). Id. at 27-28. The Court then began the evidentiary portion of the sentencing hearing. Id. at 28.

The evidentiary portion of the sentencing hearing lasted approximately two days. Federal Bureau of Investigation Special Agent Derek Trout testified that, according to Crystal, Herman had an electrical cord around Engst's neck and was choking her. Doc. No. 90, pp. 12-13. Crystal explained Herman then beat Engst by "jumping up and down" on her and choking her. Id. at 14. After the beating, Herman put Engst in the trunk and began driving. Id. According to Agent Trout, Crystal informed him that during the drive she could "hear [Engst] in the trunk screaming and begging for her life." Id. at 15. Crystal represented that after fifteen minutes or so of driving, Herman stopped on a bridge, pulled Engst "out of the trunk onto the ground, start[ed] kicking her and jumping up and down on her again." Id. at 15-16. Herman then began hitting Engst with a shovel, according to Crystal, and eventually Engst was wrapped in a tarp, tied down with bricks, and then thrown in the river. Id. at 16-17. According to Crystal, Engst was pleading for her life the entire time and was still alive when she was thrown in the river. Id. Agent Trout acknowledged that Crystal was the entire source of the information about what happened at the river and Engst's killing. Id. at 77.

Engst's body was found approximately four months after her death. Doc. No. 89, pp. 33-34. Her autopsy was performed by Dr. Koponen, who noted that it "exhibited advanced postmortem decompositional changes." Id. at 37-38. Even so, Dr. Koponen observed a series of four injuries on the scalp. Id. at 43. Additionally, while Dr. Koponen testified that he did not see any evidence of strangulation "as a cause of death," he explained that Engst could have been otherwise injured. Id. at 51-52, 60. Koponen further acknowledged that he saw nothing in the autopsy that could give him a definitive ability to say that Engst was "beatdown," beaten, kicked,

jumped on, etc., but testified that his observations from the autopsy did not give him any reason to doubt the information law enforcement provided regarding the "beatdown." Id. at 53-54, 58-59.

Upon completion of the evidentiary portion of the sentencing hearing, the parties made their sentencing recommendations. The United States moved for an upward departure under USSG § 5K2.8 or, alternatively, for a variance under 18 U.S.C. § 3553(a). Doc. No. 90, p. 117. Conversely, Herman's attorney requested a guideline sentence, arguing, among other things, that Crystal's representations were allegedly unsupported (or allegedly contradicted) by Dr. Koponen's autopsy and emphasizing Herman's significant meth use. See id. at 120-125. Herman gave an allocution, in which he explained that he, Crystal, and Engst "were all using meth a lot." Id. at 139-140. After his allocution, the Court asked Herman, "Do you have anything regarding the facts and circumstances of the factual basis that we reviewed on Friday, which was really a reiteration of the factual basis form your change of plea hearing? Do you have anything that you'd like to add or change?" Id. at 141. Herman responded, "No." Id.

Next, the Court established the applicable guideline range. To that end, the Court calculated a total offense level of 35: a base offense level of 38, minus 2 levels for acceptance of responsibility and minus 1 level for timely notification. Id. at 157. Herman had a criminal history score of 19 points, placing him in a criminal history category VI. Id. at 156. This resulted in a guideline range of 292 months to 365 months imprisonment. Id. at 157-158.

Having established the applicable guideline range and with the evidence and parties' arguments in mind, the Court granted the United States' motion for an upward departure pursuant to USSG § 5K2.8 and departed upward 2 levels, which increased the sentencing guideline range to 360 months to life. Id. at 160-162. Additionally, and alternatively, the Court granted the United States' motion for a variance above the guideline provisions under 18 U.S.C. § 3553(a). Id. at 158. The Court sentenced Herman to life, ordered the $100 special assessment, and left restitution open

for 60 days. Id. at 165. The Court advised Herman of his right to appeal, explaining that he "specifically retained the right to appeal the 5K2.8 motion[.]" Id. at 169. As contemplated by the plea agreement, the Court also dismissed the three-count indictment. Id. at 170-171. The Court entered a judgment to the same. Doc. Nos. 82, 85.

Herman appealed his sentence to the United States Court of Appeal for the Eighth Circuit. Doc. No. 86. On March 29, 2021, the Eighth Circuit affirmed the Court's sentence. Doc. No. 95-1. Notably, the Eighth Circuit specifically found that, "[n]othing the medical examiner said during the sentencing hearing, either about the cause of death or the condition of Engst's body, contradicted [Crystal's] account." Id. His § 2255 motion followed.

## II.   LEGAL STANDARD

A motion under 28 U.S.C. § 2255 provides avenues for relief "in several circumstances, including cases shown to contain jurisdictional errors, constitutional errors, and errors of law." Raymond v. United States, 933 F.3d 988, 991 (8th Cir. 2019) (citing 28 U.S.C. § 2255(b)). More specifically, § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). As such, § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Fletcher v. United States, 858 F.3d 501, 505 (8th Cir. 2017) (quoting Jennings v. United States, 696 F.3d 759, 762 (8th Cir. 2012)).

Relatedly, the court may dismiss a § 2255 motion without a hearing if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Tinajero-Ortiz v. United States, 635 F.3d 1100, 1105

(8th Cir. 2011). "The movant bears the burden to prove each ground entitling relief." Golinveaux v. United States, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted). Whether to grant or deny an evidentiary hearing is committed to the discretion of the district court. See id.

## III.   DISCUSSION

In support of his claim for § 2255 relief, Herman alleges four grounds: (1) diminished capacity, (2) conflicting statements between medical examiner (Dr. Koponen) and the United States' witness, (3) location of the crime, and (4) ineffective assistance of counsel. Doc. No. 103.

### A.   Diminished Capacity

First, Herman raises his purportedly diminished capacity as grounds for § 2255 relief, alleging that he "was under the influence of Drugs and Alcohol at the time of alleged crime. We were all using meth, (the defendant, [victim], and witness.) [I] was also drinking beer and smoking pot, so was not in a clear state of thinking. In the witnesses earlier statements she also said I was intoxicated on alcohol." Doc. No. 103, p. 8. The United States responds that this ground is procedurally defaulted, among other things. Doc. No. 108, p. 29. The Court agrees.

A "claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." United States v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001) (internal citation omitted). "As to 'actual prejudice,' a movant must show that the error 'worked to [his or her] actual and substantial disadvantage.'" Dunlap v. United States, No. 17-03016-01-CR-S-RK, 2020 WL 6797020, at *3 (W.D. Mo. Jan. 13, 2020) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). As an initial matter, the Court notes Herman does not allege that he is actually innocent. See Doc. No. 103, p. 8. Therefore, Herman's claim of diminished capacity is procedurally defaulted unless he can demonstrate "cause for the default and actual prejudice."

Here, Herman cannot demonstrate cause and actual prejudice because the issue of his meth consumption was raised multiple times and was considered by the Court. His use of meth prior to the death of Engst was raised by his attorney prior to sentencing, who argued that Herman, Crystal, and Engst "were all consuming considerable amounts of methamphetamine[.]" Doc. No. 75, p. 10. At sentencing, his attorney again presented arguments regarding Herman's methamphetamine use and how it affected his actions (Doc. No. 90, pp. 121-122, 124-125), and the issue of his meth consumption was explicitly discussed in the PSR. Doc. No. 61, ¶ 12 (Herman "indicated that he was using methamphetamine heavily for weeks leading up to [Engst's] death."), ¶ 76. Notably, Herman further addressed his meth use in his allocution, explaining that he, Crystal, and Engst "were all using meth a lot." Doc. No. 90, pp. 139-140. All of this information was considered by the Court prior to sentencing. See Id. at 145, 147.  Furthermore, "[i]f a defendant's reduced capacity is due to voluntary drug use, the Sentencing Guidelines do not provide for a downward departure." Hinds v. United States, No. CIV. 10-4177-KES, 2011 WL 4729854, at *4 (D.S.D. Oct. 5, 2011) (citing USSG § 5K2.13). Therefore, while this information could have been mitigating, Herman has failed to raise any cause for the default or actual prejudice as his methamphetamine use was clearly raised before and during sentencing and considered by the Court. As such, his argument as to his purported diminished capacity is procedurally defaulted, provides no basis for relief, and is without merit.

### B.    Conflicting Statements

Herman next raises the purported conflicting statements between medical examiner (Dr. Koponen) and United States' witness as grounds for relief.[5] Doc. No. 103, p. 7. More specifically,

---

[5] The United States notes that while Herman "does not name the 'government witness,'" it understands it to "be a reference to the information that Crystal Herman provided to law enforcement," even though Crystal did not testify at the sentencing hearing. Doc. No. 108, p. 26.

Herman claims that "[the United States'] witness said there [were] multiple beatings and strangulation but the medical examiner says that there is no conclusive evidence of either. (he cannot confirm or deny) The [United States'] witness also said that the defendant repeatedly jumped up and down on the [victim] but the [medical examiner] says there[']s no evidence of that either." Id. The Court construes these allegations as a challenge to the sufficiency of the evidence that supports the finding that an upward departure was justified under USSG § 5K2.8.

Herman, however, raised an identical argument on direct appeal. "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (internal quotation and citation omitted). Here, in the plea agreement, Herman expressly reserved his right to appeal an upward departure under USSG § 5K2.8. Doc. No. 36, ¶¶ 14, 21. And, when the Court departed upward under USSG § 5K2.8, he did, in fact, appeal. As such, Herman clearly exercised his rights reserved under the plea agreement to directly appeal an upward departure under USSG § 5K2.8. Moreover, on appeal, he raised arguments about the information Crystal provided and the conclusions of Dr. Koponen, given that the Eighth Circuit stated, "[n]othing the medical examiner said during the sentencing hearing, either about the cause of death or the condition of Engst's body, contradicted [Crystal's] account." Doc. No. 95-1. In sum, the Eighth Circuit considered these same arguments on direct appeal and affirmed the Court's findings.  Herman is foreclosed from relitigating this issue now and is not entitled to relief on this claim.

## C.    Location of the Crime

Third, Herman argues, "The alleged crime was not committed on said Reservation. It happened on a state owned, built and maintained bridge, in Eddy County North Dakota. [It] is not

---

The Court agrees. Likewise, Herman's references to the "medical examiner" clearly refer to Dr. Koponen.

Federal Jurisdiction where the alleged crime supposedly occurred[] on October 12, 2015." Doc. No. 103, p. 4. The United States asserts that his claim that the offense did not occur in Indian Country does not touch on the subject matter jurisdiction of the Court and instead is "an insufficiency of the evidence argument," which is waived if not challenged on direct appeal. Doc. No. 108, p. 11 (quoting United States v. Tony, 637 F.3d 1153, 1159 (10th Cir. 2011)).

In support of its argument, the United States cites United States v. Pemberton, 405 F.3d 656 (8th Cir. 2005), which is instructive. In Pemberton, the Eighth Circuit explained:

> A dispute over his status as an Indian or non-Indian, while relevant to the matter of proof at trial, did not deprive the district court of jurisdiction. See United States v. White Horse, 316 F.3d 769, 772 (8th Cir. 2003). "As the Supreme Court has recently made clear, the matter of jurisdiction has to do only with 'the court's statutory or constitutional *power* to adjudicate the case.'" Id. (quoting United States v. Cotton, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) (citation omitted) (emphasis in original)). "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231 .... That's the beginning and the end of the 'jurisdictional' inquiry." Id. (quoting Hugi v. United States, 164 F.3d 378, 380 (7th Cir. 1999)); see also United States v. Beck, 250 F.3d 1163, 1165-66 (8th Cir. 2001) ("[T]he nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements of § 844(i) .... It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case.") (quoting United States v. Martin, 147 F.3d 529, 531-32 (7th Cir. 1998)). Thus, we hold the alleged dispute over Pemberton's Indian status did not deprive the district court of jurisdiction.

Pemberton, 405 F.3d at 659. Pemberton was decided on direct appeal (and as such did not involve a motion under § 2255) and concerned the defendant's status as an Indian (rather than whether the offense occurred in Indian Country). The Tenth Circuit, however, applied Pemberton in ruling on a § 2255 motion concerning whether the offense at issue occurred in Indian Country. See Tony, 637 F.3d at 1159. More specifically, in Tony, the Tenth Circuit cited Pemberton, among other cases, in support of the proposition that "[t]o obtain a conviction, the government was required to plead and prove the crime occurred in Indian Country. Failure to do so would not remove subject-matter jurisdiction." Id. The Tenth Circuit ultimately found that the defendant's "claim is really an

insufficiency of the evidence argument and was waived when he failed to raise it on direct appeal." Id.

Here, the Court agrees with the analysis in Pemberton and Tony and finds that, under the specific facts of this case, Herman's argument that the "alleged crime was not committed on said Reservation," i.e. Indian Country, is more accurately characterized as an insufficiency of the evidence argument. When reviewing an insufficiency of the evidence argument, "it is well-established that a valid guilty plea is an admission of guilt that waives all non-jurisdictional defects and defenses." United States v. Harcevic, 999 F.3d 1172, 1179 (8th Cir. 2021) (cleaned up) (internal citation and quotation omitted). And a guilty plea "'is the equivalent of admitting all material facts alleged in the charge.'" Id. at 1180.

Here, Herman entered, and the Court accepted, a valid guilty plea to an information charging him with second-degree murder within Indian Country in violation of 18 U.S.C. §§ 1111 and 1153. Doc. Nos. 36, 39. The plea agreement included a factual basis at paragraph 6, which stated that Herman "took one or more violent actions, in concert with Crystal Herman, in Indian Country, on the Spirit Lake Indian Reservation, the actions of which caused the death of Amanda Engst." Doc. No. 36, ¶ 6. At the Change of Plea, the United States supplemented this factual basis with essentially the same information, explaining Herman killed Engst "in the District of North Dakota in Indian Country and within the exclusive jurisdiction of the United States," and, more specifically, that on October 12, 2015, Herman "took one or more violent actions in concert with Crystal Herman in Indian Country on the Spirit Lake Indian Reservation, the actions of which caused the death of Amanda Engst." Doc. No. 54, p. 14. Accordingly, the factual basis in the plea agreement, and as supplemented, specifically provides that the crime at issue occurred in Indian Country. Moreover, at the Change of Plea, the Court also engaged with Herman on this precise issue:

The Court: If this case were to go to trial, do you believe the government would prove each and every fact that Mr. Chase just recited?
The Defendant: Yes.
The Court: Is that because they're true?
The Defendant: Yes.
The Court: Do you admit that you killed Miss Engst in Indian Country?
The Defendant: Yes.
The Court: Do you admit all of the other elements of the crime that are set out in your Plea Agreement?
The Defendant: Yes.

Id. at 15. The Court then accepted his guilty plea, finding Herman "is entering the plea voluntarily with full knowledge of the facts[.]" Id. at 19.

Then, at sentencing, the Court once again independently reviewed the factual basis with particularity. The Court placed Herman under oath and engaged in a conversation about the factual basis for his guilty plea. And once again, he admitted that the crime occurred in Indian Country and that he understood that he was waiving any arguments to the contrary:

The Court: . . . Now for the purposes of this hearing are you in a position where you are willing to reiterate that this crime did occur as you set forth at the change of plea hearing and that it did happen in Indian Country?
The Defendant: Yes.
The Court: Are you refuting any of the factual basis that was provided at the change of plea hearing under oath?
The Defendant: No.
The Court: Are you satisfied that you have had an opportunity to confer with counsel with regards to this particular fact that is of importance to this hearing?
The Defendant: Yes.
The Court: And you understand that you have then admitted to a factual basis where you killed Ms. Engst in Indian Country?
The Defendant: Yes.

***

The Court: Do you have any objection to the factual basis in this matter? Do you have any objection – well, I'll let you answer that first. Do you have any objection to the factual basis in this matter?
The Defendant: No.
The Court: Do you have any objection that this crime occurred in Indian Country?
The Defendant: No.
The Court: Now as far as I'm concerned, with regards to the Plea Agreement there was a waiver of appeal that was signed per the Plea Agreement and you have been

15

well advised of any possible jurisdictional issues here and you have waived that. In fact, I believe that the appeal that you retained in this matter was under 5K2.8 and I think that's what you retain. So this would not be something that you'd be able to appeal. Do you realize that you've waived the right to appeal jurisdiction?
The Defendant: Yes.
The Court: And you still wish to go forward?
The Defendant: Yes.
The Court: And you've consulted with your counsel on this?
The Defendant: Yes.
The Court: And you understand the ramifications of that?
The Defendant Yes.

*** 

The Court: Sure. So other than ineffective assistance of counsel and the upward departure under 5K2.8, the defendant understands that he's waived his right to appeal?
The Defendant: Yes.
The Court: And the record will reflect that Mr. Herman nodded his head and answered yes and that Mr. Lancaster was also nodding his head.

Doc. No. 89, pp. 21-22, 24-26.

Importantly, it is well-established that a defendant's statements while under oath carry a strong presumption of truthfulness. United States v. Green, 521 F.3d 929, 931 (8th Cir. 2008); United States v. Ledezma-Rodriquez, 423 F.3d 830, 836 (8th Cir. 2005); United States v. White, 610 F. App'x 579, 582 (8th Cir. 2015). Significantly and importantly, at both the Change of Plea and at sentencing, the Court went to great lengths to ensure that Herman understood that as a part of the factual basis for his guilty plea he was admitting to and waiving the right to appeal the fact that the crime at issue occurred in Indian Country. Herman indicated multiple times, while under oath, that he understood. And, the Court accepted his valid guilty plea.  Therefore, given the valid guilty plea and the specific facts of this case, Herman waived his argument regarding whether the crime occurred in Indian Country, and he is not entitled to § 2255 relief on this issue.

### D.    Ineffective Assistance of Counsel

Lastly, Herman raises several arguments in support of an ineffective assistance of counsel claim. To obtain relief on an ineffective assistance of counsel claim, a petitioner must satisfy the

two-prong test announced in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). For the first prong, a petitioner must establish constitutionally deficient representation, meaning counsel's performance fell below an objective standard of reasonableness. <u>Meza-Lopez v. United States</u>, 929 F.3d 1041, 1044 (8th Cir. 2019) (citing <u>Strickland</u>, 466 U.S. at 687-88). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. Courts view the representation from counsel's perspective at the time of the alleged error to avoid the effects of hindsight and second-guessing. <u>Kemp v. Kelley</u>, 924 F.3d 489, 500 (8th Cir. 2019) (citing <u>Strickland</u>, 466 U.S. at 489). A petitioner must overcome a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690; <u>see also</u> <u>Camacho v. Kelley</u>, 888 F.3d 389, 394 (8th Cir. 2018). Strategic decisions made after a thorough investigation of the law and facts are virtually unchallengeable. <u>United States v. Orr</u>, 636 F.3d 944, 950 (8th Cir. 2011).

To satisfy the second prong, a petitioner must demonstrate that prejudice resulted from the deficient representation. <u>Strickland</u>, 466 U.S. at 687. To do so, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Adejumo v. United States</u>, 908 F.3d 357, 361 (8th Cir. 2018) (quoting <u>Strickland</u>, 466 U.S. at 694). A reasonable probability is one "sufficient to undermine confidence in the outcome." <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003) (quoting <u>Strickland</u>, 466 U.S. at 694). When evaluating the probability of a different result, courts view the totality of the evidence to gauge the effect of the error. <u>Williams v. United States</u>, 452 F.3d 1009, 1013 (8th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 495). Where a petitioner raises multiple ineffective assistance of counsel claims, each claim must be examined independently rather than collectively. <u>Hall v.</u>

Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002) (citing Wainwright v. Lockhart, 80 F.3d 1226,

1233 (8th Cir. 1996)). Cumulative error will not justify habeas relief.  Middleton v. Roper, 455

F.3d 838, 851 (8th Cir. 2006).

Here, Herman identifies four errors purportedly committed by his former counsel: (1)

failing to "look[] into my Jurisdiction issue" and "not arguing in [Herman's] best of interest the

alleged crime not committed on Spirit Lake Nation (Indian Reservation)[;]" (2) lying to him and

informing him that "Second Degree Murder was the best plea" he would receive; (3) informing

him that he "wouldn't receive a life sentence[;]" and (4) informing him that "there is no such thing

as aiding and abetting in federal law." Doc. No. 103, p. 5.

### 1.    Jurisdiction and Location of the Crime

As to Herman's claim that his former attorney failed to look into the jurisdictional issue

and failed to argue that the alleged crime was not committed in Indian Country, the record in this

case clearly shows the contrary. For example, as previously highlighted:

> The Court: . . . Now for the purposes of this hearing are you in a position where
> you are willing to reiterate that this crime did occur as you set forth at the change
> of plea hearing and that it did happen in Indian Country?
> The Defendant: Yes.
> The Court: Are you refuting any of the factual basis that was provided at the change
> of plea hearing under oath?
> The Defendant: No.
> The Court: Are you satisfied that you have had an opportunity to confer with
> counsel with regards to this particular fact that is of importance to this hearing?
> The Defendant: Yes.
> The Court: And you understand that you have then admitted to a factual basis where
> you killed Ms. Engst in Indian Country?
> The Defendant: Yes.

Doc. No. 89, p. 21-22 (emphasis added). The Court even sought direct comment from Herman's

attorney, asking if Herman understood "what he is positing to the Court." Id. at 23. His attorney

responded:

Yes, Your Honor. And what I would suggest is we've reviewed those issues and obviously went through those issues as counsel and I on many occasions talked about the fact that jurisdiction would be an issue with regard to the charge. And Mr. Herman and I had lengthy discussions about that in looking at the Plea Agreement. And I think if the Court asks Mr. Herman if we've reviewed those issues and whether he was satisfied with our discussion and in that light is admitting to that element of the offense as he's admitted to all the other elements of the offense, I think that would be sat - -- I believe the Court would find that to be satisfactory.

Id. at 23-24. The Court then turned back to Herman:

The Court: Do you have any objection to the factual basis in this matter? Do you have any objection – well, I'll let you answer that first. Do you have any objection to the factual basis in this matter?
The Defendant: No.
The Court: Do you have any objection that this crime occurred in Indian Country?
The Defendant: No.
The Court: Now as far as I'm concerned, with regards to the Plea Agreement there was a waiver of appeal that was signed per the Plea Agreement and you have been well advised of any possible jurisdictional issues here and you have waived that. In fact, I believe that the appeal that you retained in this matter was under 5K2.8 and I think that's what you retain. So this would not be something that you'd be able to appeal. Do you realize that you've waived the right to appeal jurisdiction?
The Defendant: Yes.
The Court: And you still wish to go forward?
The Defendant: Yes.
The Court: And you've consulted with your counsel on this?
The Defendant: Yes.
The Court: And you understand the ramifications of that?
The Defendant: Yes.

Id. at 24-26 (emphasis added). Again, it is well-established that a defendant's statements while under oath carry a strong presumption of truthfulness. Green, 521 F.3d at 931; Ledezma-Rodriquez, 423 F.3d at 836; White, 610 F. App'x at 582. As such, and as shown by the record, Herman's former attorney clearly investigated and carefully considered the purported "jurisdictional" issue, whether the crime occurred in Indian County, a fact that the Court independently and specifically verified at sentencing. If Herman believed he had not adequately consulted with his attorney, or that his representation had been deficient, he had ample opportunity

to inform the Court. Accordingly, Herman's assertion that his former attorney did not look into the purported "jurisdictional" element is clearly refuted by the record in this case.

Admittedly, it is true that Herman's former attorney failed to argue that the alleged crime was <u>not</u> committed in Indian Country. This decision, however, was a strategic choice his attorney made after reviewing the issue "on many occasions" and after "lengthy discussions" with Herman, as shown by the record in this case. Doc. No. 90, p. 23-24. Given the strong presumption that counsel's performance was reasonable and based on sound strategy, Herman's claim fails to satisfy the first prong of the <u>Strickland</u> test.

### 2.      "Best Plea"

Next, Herman seems to suggest that his attorney could have or should have negotiated a better plea agreement. <u>See</u> Doc. No. 103 ("He lied to me and told me Second Degree Murder was the best plea I would get."). "The right to effective assistance of counsel extends to plea negotiations [] and requires counsel to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>United States v. Petters</u>, 986 F. Supp. 2d 1077, 1081 (D. Minn. 2013) (internal citations and quotations omitted). Even so, "[t]here is no constitutional right to plea bargain." <u>Nguyen v. United States</u>, 114 F.3d 699, 704 (8th Cir. 1997) (internal citation and quotations omitted).

As an initial matter, Herman has not argued that the United States made any additional formal or informal plea offers. And, as posited by the United States, it "was not willing to offer a better deal to [Herman] for the unprovoked, heinous, and senseless murder of Ms. Engst." Doc. No. 108, p. 22. Therefore, Herman's argument that his former attorney "lied" by representing that the plea offer of second-degree murder was the "best plea" Herman would get is speculative and conclusory.

Here, Herman was originally charge through a three-count indictment in which two counts carried mandatory life in prison. <u>See</u> Doc. No. 1; 18 U.S.C. § 1201(a). However, he and the United States entered into a plea agreement where he pleaded guilty to a single-count information charging second-degree murder within Indian Country, which importantly <u>did not</u> carry a mandatory sentence of life. Although the United States reserved the right to seek an upward departure to life under USSG § 5K2.8, the plea agreement specifically acknowledged that Herman "will oppose this argument" and retain his right to appeal an upward departure under USSG § 5K2.8. Doc. No. 36, ¶ 14.

So, in effect, the plea agreement took the mandatory life sentence off the table, allowed Herman to argue for a lesser sentence, and reserved his right to appeal—all of which he did and all of which highlights that his attorney's performance certainly did not fall below an objective standard of reasonableness.  Given the record above, Herman's speculative claim that he could have got a better plea agreement cannot be accepted as true, as it is contradicted by the record, inherently incredible, and is simply a conclusion rather than a statement of fact.  As a result, this claim also fails the first prong of the <u>Strickland</u> test.

### 3.    No Life Sentence

Herman next argues that his former attorney told him that he would not get a life sentence. Even accepting this claim as true, he would not be entitled to relief because "[i]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." <u>Walker v. United States</u>, 810 F.3d 568, 578 (8th Cir. 2016) (internal citation and quotation omitted). Indeed, as well-stated by the Eighth Circuit:

This case closely resembles <u>Regenos</u>, where we held that a petitioner's claim of ineffective assistance of counsel failed "because she cannot prove that the result of the plea negotiations would have been different had her counsel performed adequately." 405 F.3d at 693. Because allegedly omitted information had been "fully supplied to [the petitioner] throughout the plea process" and the district court had "explicitly informed" the petitioner of the potentially applicable sentences during the plea colloquy, the <u>Regenos</u> petitioner failed to prove <u>Strickland</u> prejudice. Here, the government and the district court informed Tinajero–Ortiz multiple times that his statutory sentencing range was between five and forty years and that his advisory guideline range could be different from what his attorney had predicted. Tinajero–Ortiz has thus failed to meet the burden of proving <u>Strickland</u> prejudice.

<u>Tinajero-Ortiz</u>, 635 F.3d at 1105.

Here, the Court advised Herman of the maximum sentence he faced by pleading guilty. Doc. No. 54, pp. 6-7. This information was also part of the plea agreement. Doc. No. 36, ¶ 7. Further, Herman indicated on the record that he understood the maximum sentence prior to pleading guilty. Doc. No. 54, p. 7. In short, even if his counsel advised him deficiently regarding his potential sentence (which this Court believes to be quite unlikely), this error was rectified by the Court's accurate communication of the potential sentence, and Herman suffered no prejudice. <u>See</u> e.g., <u>Matthews v. United States</u>, 114 F.3d 112, 114 (8th Cir. 1997) (§ 2255 petitioner could not show prejudice on claim that counsel improperly advised him about the length of his potential sentence, because, "[r]egardless of what his trial counsel advised him concerning the length of the potential sentences that might result from his guilty pleas, the record demonstrates that the trial judge clearly explained the potential maximum sentence to [the petitioner] at the plea proceeding."). As a result, this claim also fails under <u>Strickland</u>.

### 4.    Aiding and Abetting

Finally, Herman asserts his former attorney failed to tell him that "there is no such thing as aiding and abetting under federal law." Doc. No. 103, p. 5. The United States notes that Herman

"does not provide any context for this statement or explain how such a statement, even if made constitutes deficient performance or caused him prejudice." Doc. No. 108, p. 25. The Court agrees.

Conclusory allegations are claims that lack factual specificity. See Allen v. Entergy Corp., 181 F.3d 902, 905-06 (8th Cir. 1999); see also Berg v. Norand Corp., 169 F.3d 1140, 1146 (8th Cir. 1999). Here, Herman fails to provide any detail regarding what facts he is alleging his counsel should have presented that would have minimized his role and led to a different sentence. Without more detail, this allegation is an unsupported conclusion. Because this claim consists of a single, conclusory allegation, the claim does not overcome the presumption of reasonable assistance, and as a result, the claim fails under Strickland. Additionally, Herman fails to allege prejudice as there is no explanation as to how additional facts being presented by counsel would have led to a more favorable result.  In sum, none of Herman's four claims regarding ineffective assistance of counsel entitle him to § 2255 relief.

### E.    Evidentiary Hearing

Section 2255(b) requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." No hearing is necessary "if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003).

After careful review of the file and all of Herman's substantive § 2255 claims, the record decisively refutes each claim presented by him. Additionally, and as discussed above, Herman offers largely conclusory allegations and few statements of fact in support of his § 2255 claims and motion. As such, dismissal without an evidentiary hearing is warranted. See Calkins v. United States, 795 F.3d 896, 900 (8th Cir. 2015).

IV.   **CONCLUSION**

The Court has reviewed the record, the parties' filings, and the relevant legal authority. Hermans's allegations, even when taken as true, are insufficient to support his claim, contradicted by the record, inherently incredible, or conclusions rather than statements of fact. As a result, Herman's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 103) is **DENIED**. This matter is **DISMISSED WITHOUT PREJUDICE** and without an evidentiary hearing.

The Court certifies that an appeal from the denial of the motion may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Based upon the entire record, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, the Court will not issue a certificate of appealability. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983); Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997). If Herman desires further review of his motion, he may request a certificate of appealability from a circuit judge of the Eighth Circuit Court of Appeals.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 22nd day of September, 2022.

> _/s/ Peter D. Welte_____
> Peter D. Welte, Chief Judge
> United States District Court